1

2

3

4

5

6                                    UNITED STATES DISTRICT COURT

7                                         DISTRICT OF NEVADA

8                                                 * * *

9                                                              Case No. 2:11-cv-00445-MMD-PAL

10                                                                          ORDER

11   PRISCELLA R. SAINTAL,                            (Plf.'s Motion for Reconsideration
                                                              – dkt. no. 29;
12                                     Plaintiff,      Defs.' Motion to Extent Time -  dkt. no. 33;
                                                         Defs.' Motion for Summary Judgment
13        v.                                                 – dkt. no. 35;
                                                          Plf.'s Motion to Amend Complaint
14   SHERYL FOSTER, et. al.,                                 – dkt. no. 39;
                                                       Defs.' Motion to Strike – dkt. no. 42;
15                                     Defendants.    Plf.'s Motion for Temporary Restraining Order
                                                             – dkt. no. 48;
16                                                     Plf.'s Motion for Preliminary Injunction
                                                             – dkt. no. 49;
17                                                        Plf.'s Motion to Amend – dkt. no. 50)

18

19   I.      SUMMARY

20           This *pro se* prisoner civil rights action by a Nevada state inmate comes before this

21   Court on numerous pending motions listed in the caption above.  After considering the

22   briefings of all ripe motions, the Court issues its decisions consistent with the reasoning

23   set forth below.

24   II.     BACKGROUND

25           Plaintiff Priscella R. Saintal is a current inmate at the Florence McClure Women's

26   Correctional Center (FMWCC) in North Las Vegas, Nevada.  Saintal instituted this action

27   on March 24, 2011, alleging retaliation for grievances she prepared on behalf of her

28   partner and co-inmate, Angela Gaines, whom Saintal alleges was victim to beatings and

1   druggings at the hands of correctional officers.  Between May 2009 and November 2011,

2   Saintal has a long history of disciplinary problems at FMWCC, which she argues resulted

3   from retaliatory treatment by Defendants.  Many of the disciplinary charges were

4   dismissed, some resulted findings of not guilty, and some resulted in guilty findings.

5   Among the guilty rulings were findings of disobedience, fighting, unauthorized use of

6   mail, and property violations.

7       During this same period, Saintal submitted numerous grievances.  (Dkt. no. 35-F.)

8   One of the grievances related to missing personal property was upheld in favor of Saintal

9   (dkt. no. 35-F at 17), but the remainder were either not accepted, or denied without

10  appeal, or denied after appeal (dkt. nos. 35-B and 35-F).

11      Saintal filed her Complaint *in forma pauperis* on March 24, 2011.  (Dkt. no. 1.)

12  She filed an Amended Complaint on June 20, 2011.  (Dkt. no. 11.)  In the Amended

13  Complaint, Saintal added claims against various officers, alleging violations of her First,

14  Fourth, Eighth, and Fourteenth Amendment rights.  In its June 20, 2011, Screening

15  Order, the Court screened Saintal's Amended Complaint and allowed only her First

16  Amendment retaliation claim to proceed.  (*See* dkt. no. 10.)  This First Amendment claim

17  is the subject of Defendants' Motion for Summary Judgment, discussed below.

18  **III.   DISCUSSION**

19      **A.  Motion for Reconsideration of Court's Decision to Strike (dkt. no. 29)**

20      On October 17, 2011, Magistrate Judge Peggy A. Leen granted Defendants'

21  Motion to Strike.  (Dkt. no. 26.)  Saintal seeks reconsideration of that order on the ground

22  that she had, unbeknownst to the Court, actually filed an opposition to the Defendants'

23  Motion to Strike.  The Court's Order noted that Saintal had failed to file an opposition to

24  Defendants' Motion to Strike.  Saintal asserts in her Motion that she had handed her

25  Opposition to the law library supervisor, but that supervisor failed to file the opposition.

26          **1.   Legal Standard**

27      Although not mentioned in the Federal Rules of Civil Procedure, motions for

28  reconsideration may be brought under Rules 59(e) and 60(b).  Rule 59(e) provides that

1   any motion to alter or amend a judgment shall be filed no later than 28 days after entry

2   of the judgment.  The Ninth Circuit has held that a Rule 59(e) motion for reconsideration

3   should not be granted "absent highly unusual circumstances, unless the district court is

4   presented with newly discovered evidence, committed clear error, or if there is an

5   intervening change in the controlling law."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma*

6   *GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v.*

7   *Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

8                                    **2.     Analysis**

9          Saintal has not provided any evidence of "highly unusual circumstances."  Without

10  any newly discovered evidence or showing of error in the Court's decision on the Motion

11  to Strike, Saintal's request for reconsideration fails.  Even though the failure to file the

12  Opposition is regrettable, the Magistrate Judge premised her decision on the Motion to

13  Strike in part based on Saintal's failure to adhere to a court order, notwithstanding the

14  lack of an Opposition to the Motion.  For this reason, Saintal's request to reconsider this

15  Order fails, and the Motion for Reconsideration is denied.

16

17         **B.     Motion to Extend Time Regarding Discovery/Nondispositive Matter**
            **(dkt. no. 33)**

18         Defendants sought additional time to respond to Saintal's Amended Complaint

19  due to a change in counsel.  Defendants subsequently responded by filing their Motion

20  for Summary Judgment (dkt. no. 35).  In light of the personnel issues highlighted in the

21  Motion to Extend Time that necessitated the extension, the Court grants Defendants'

22  request.

23

24         **C.     Motion to Strike Plaintiff's Unauthorized Sur-Reply to Motion for**
            **Summary Judgment (dkt. no. 42)**

25         After Defendants filed a reply to Saintal's response to their Motion for Summary

26  Judgment, Saintal attempted to file a sur-reply.  (*See* dkt. no. 41.)  Defendants

27  subsequently filed a Motion to Strike this sur-reply.  (Dkt. no. 42.)  In deciding

28  Defendants' Motion to Strike, the Court is mindful that its "obligation remains [after

1    *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)], where the petitioner is pro se, particularly in civil

2    rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of

3    any doubt."  *Hebbe v. Plier*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).  Given

4    the circumstances, the Court will not strike the sur-reply.  Defendants' Motion to Strike is

5    denied.

6           **D.    Motion for Summary Judgment (dkt. no. 35)**

7           Defendants filed their Motion for Summary Judgment on Saintal's remaining First

8    Amendment claim.  For the reasons discussed below, Defendants' Motion is granted.

9                  **1.    Legal Standard**

10          The purpose of summary judgment is to avoid unnecessary trials when there is no

11   dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

12   F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings,

13   the discovery and disclosure materials on file, and any affidavits "show there is no

14   genuine issue as to any material fact and that the movant is entitled to judgment as a

15   matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine"

16   if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

17   the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

18   under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

19   Where reasonable minds could differ on the material facts at issue, however, summary

20   judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

21   1995), *cert. denied*, 516 U.S. 1171 (1996).  "The amount of evidence necessary to raise

22   a genuine issue of material fact is enough 'to require a jury or judge to resolve the

23   parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897,

24   902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89

25   (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all

26   inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v.*

27   *Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

28   ///

                                                    4

1    The moving party bears the burden of showing that there are no genuine issues
2    of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In
3    order to carry its burden of production, the moving party must either produce evidence
4    negating an essential element of the nonmoving party's claim or defense or show that
5    the nonmoving party does not have enough evidence of an essential element to carry its
6    ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210
7    F.3d 1099, 1102 (9th Cir. 2000).   Once the moving party satisfies Rule 56's
8    requirements, the burden shifts to the party resisting the motion to "set forth specific
9    facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The
10   nonmoving party "may not rely on denials in the pleadings but must produce specific
11   evidence, through affidavits or admissible discovery material, to show that the dispute
12   exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do
13   more than simply show that there is some metaphysical doubt as to the material facts."
14   *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).
15   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be
16   insufficient." *Anderson*, 477 U.S. at 252.

17        **2.    Discussion**

18        Defendants lodge two arguments in favor of their Motion.  First, they argue that
19   Saintal failed to properly exhaust her administrative remedies before bringing this First
20   Amendment challenge.  Second, they argue that Saintal's First Amendment retaliation
21   claim fails as a matter of law, since the alleged retaliation that occurred here was in
22   response to legitimate disciplinary issues and that Saintal had no protected right to filing
23   grievances while detained.  Because the Court holds that Saintal failed to exhaust her
24   available remedies, Defendants' argument on the merits of the First Amendment claim
25   need not be discussed.

26        The Prison Litigation Reform Act ("PLRA") requires that no action relating to
27   prison conditions can be brought by an inmate "until such administrative remedies as are
28   available are exhausted."  42 U.S.C. § 1997e(a).  Defendants argue that the various

grievances Saintal filed on behalf of herself and Gaines were not accepted – and therefore are not exhausted – because they concerned events to which Saintal was not a party.  Defendants also assert that none of the exhausted grievances concern the retaliation claim that Saintal makes now, but rather are general harassment or unfair treatment claims.  Saintal argues that all of her claims have indeed been exhausted. She argues first that she was a party to the issues being grieved, since the issues involve her and her partner's right to have an inmate relationship together.  She further argues that, to the extent that Defendants seek summary judgment on the ground that she cannot file grievances regarding events she was not a party to, Saintal filed those grievances in a representative capacity since Gaines had given prior approval and was allegedly incapable of filing a grievance.  (*See* dkt. no. 37-2.)  She lastly argues that many of her grievances reached the "second level," which is the final level for the grievance process such that they should be considered exhausted.

The record demonstrates that Saintal appears to have filed numerous grievances over the course of her incarceration, some of which alleged retaliation against her and Gaines.  (Dkt. no. 35-F.)  In addition to retaliation, other grievances include concerns about unprofessional conduct from officers, poor medical care, inadequate religious facilities, and faulty process during disciplinary hearings.   Although Defendants claim that Saintal did not exhaust any retaliation claim, Saintal's Inmate Issue History demonstrates that Saintal has exhausted at least two grievances.  (*See id.*)  However, exhaustion occurred after Saintal filed this lawsuit, which renders this lawsuit premature.

Nevada Department of Corrections Administrative Regulation ("AR") 740 prescribes the following exhaustion requirements for inmates: (1) that the inmate file an informal grievance within six months of the date of the damage, injury, or loss; (2) that the inmate appeal an unfavorable response by filing a "first-level grievance" within five days of receiving the response; and (3) that the inmate appeal an unfavorable first-level response by filing a "second-level grievance" within five days of receiving the first-level response.  (Dkt. no. 35-G (AR 740).)  In order to determine whether Saintal's claims

1
2

were exhausted, a recounting of her numerous grievances that reached the second level
is required.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

This lawsuit was instituted on March 24, 2011, and Plaintiff's Amended Complaint
was filed on June 20, 2011.   Grievance ID #20062914915 ("915") appears to have been
exhausted after filing of the lawsuit.  (*See dkt. no.* 35-F at 5.)  This grievance concerned
alleged retaliation.  It was reported on February 6, 2011, and was ultimately denied at
the second (and final) level of review on July 7, 2011.   Similarly, grievance ID
#20062912916 ("916"), first reported on January 20, 2011, concerned retaliation in
failing to provide legal materials to Saintal.   Saintal appealed this grievance to the
second level, and it was denied on July 7, 2011.  (*See id.* at 7.)   Grievance ID
#20062909227 ("227"), first reported on December 1, 2010, concerned violation of
Saintal's due process rights by an officer who allegedly turned a recorder on and off
during a disciplinary hearing.  (*See id.* at 9.)  This grievance was appealed to the second
level, and decided there on June 9, 2011.  (*See id.*)   Grievance IDs #20062909223
("223") and #20062908808 ("808") concerned challenges to disciplinary proceedings.
These two grievances were decided at the second level on February 15, 2011.  (*See id.*
at 10-11.)   Grievance ID #20062905228 ("228") concerned the law librarian's alleged
breach of confidentiality.  This grievance was denied at the second level on December 6,
2010.  (*See id.* at 14.)

20
21
22
23
24

Two other grievances were not accepted because they failed to conform to the
guidelines for appropriate grievances.   Grievance ID #20062904262 ("262") concerned
two officers' alleged harassment and disrespect, and was not accepted on October 15,
2010, because Saintal filed it on behalf of another inmate and because it identified more
than one incident or issue.  (*See id.* at 15.)   Grievance ID #200625903830 ("830"),

25
26

concerning retaliation, was similarly not accepted at the second level for the same two
reasons.  (*See id.* at 16.)

27
28

As stated above, the exhaustion requirement of the PLRA requires that a prisoner
exhaust her claims before filing a lawsuit.   *See McKinney v. Carey*, 311 F.3d 1198,

1199-00 (9th Cir. 2002) (per curiam).  The resolution of the two exhausted retaliation

grievances ('915 and '916) post-dated Saintal's filing this suit and Amended Complaint.

"While it is true that requiring dismissal may, in some circumstances, occasion the

expenditure of additional resources on the part of the parties and the court, it seems

apparent that Congress has made a policy judgment that this concern is outweighed by

the advantages of requiring exhaustion prior to the filing of suit."  *See id.* at 1200.  For

this reason, this lawsuit cannot proceed.[1]

Although the '262 (concerning harassment) and '830 (concerning retaliation) were

appealed to the second level, they were not accepted per Defendants' procedural rules

invalidating grievances filed on behalf of others and grievances which listed multiple

issues.  Consequently, the claims incorporated therein are not deemed exhausted under

the PLRA, which requires "proper" exhaustion.  *See Woodford v. Ngo*, 548 U.S. 81, 93-

99 (2006) (holding that exhaustion of an inmate's claim requires following prison

grievance system's procedural rules); *see, e.g.*, *Collins v. Williams*, No. 10-1967, 2012

WL 3262862, at *5 (D. Nev. Aug. 8, 2012) (holding that inmate did not exhaust his

remedies because he failed to abide by NDOC procedures).   Saintal has not provided

evidence that these two grievances were dismissed improperly, a fact that might have

saved her claims from the harsh result of dismissal.  *See Sapp v. Kimbrell*, 623 F.3d

813, 825 (9th Cir. 2010) (recognizing exception to PLRA's exhaustion requirement where

prison officials improperly screen an inmate's grievance).  Although Saintal alleges that

she should be able to file grievances on behalf of Gaines, the '262 and '830 grievance

denials were also based on Saintal's failure to identify a single issue per grievance for

resolution.  Even were Saintal to have provided adequate evidence that she should have

been able to file those grievances on her own behalf or on behalf of Gaines, they would

---

[1]The '227, '223, '808, and '228 grievances that were exhausted prior to the institution of this lawsuit do not appear to concern First Amendment retaliation allegations.  Since they were unrelated to Saintal's claims before this Court, they cannot be the basis for Saintal's claim of exhaustion here.

1 have nevertheless failed to conform to NDOC's administrative regulations regarding the
2 proper form for a grievance.

### 3.   Conclusion

4 Because Saintal instituted this litigation before exhausting her First Amendment
5 retaliation claims, this suit must be dismissed pursuant to 42 U.S.C. § 1997e(a).
6 Therefore, Defendants' Motion for Summary Judgment is granted.

### E.   Motion to Amend Civil Complaint 42 U.S.C. § 1983 to Add Defendants and Claims (dkt. no. 39)

9 Approximately two months after Defendants filed their Motion for Summary
10 Judgment, Saintal filed this Motion to Amend on March 22, 2012.  (*See* dkt. no. 39.)  In
11 her Motion, she requests leave of Court to add various defendants and claims for
12 conduct occurring after the filing of the lawsuit.  Saintal did not attach an amended
13 complaint.

14 Nearly three months later, on June 21, 2012, Saintal filed a second Motion to
15 Amend.  (*See* dkt. no. 50.)  This time, she appended a supplemental complaint.  Given
16 the presence of the second Motion to Amend that appears to cover the claims that she
17 wished to include as part of her first Motion to Amend, the Court denies the first Motion
18 to Amend as moot.

### F.   Motion for Leave to File Amended Complaint (dkt. no. 50)

20 Fed. R. Civ. P. 15(d) governs the filing of supplemental pleadings.  It provides:

> On motion and reasonable notice, the court may, on just terms, permit a
> party to serve a supplemental pleading setting out any transaction,
> occurrence, or event that happened after the date of the pleading to be
> supplemented. The court may permit supplementation even though the
> original pleading is defective in stating a claim or defense. The court may
> order that the opposing party plead to the supplemental pleading within a
> specified time.

25 "The Ninth Circuit has entrusted application of this rule to the district court's broad
26 discretion." *San Luis & Delta-Mendota Water Auth. V. U.S. Dept. of Interior*, 236 F.R.D.
27 491, 495 (E.D. Cal. 2006).  "The rule is a tool of judicial economy and convenience," and
28 [i]ts use is therefore favored" in order to "promote the economical and speedy disposition

of the controversy." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).  "While some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction."  *Id.* at 474.  "The standard under Rule 15(d) is essentially the same as that under 15(a), and leave to supplement should be granted unless it causes undue delay or undue prejudice."  *Mallinckrodt Inc. v. E-Z-EM Inc.*, 671 F. Supp. 2d 563, 569 (D. Del. 2009).

Under Fed. R. Civ. P. 15, a party may amend its complaint only with leave of the court once responsive pleadings have been filed and in the absence of the adverse party's written consent.  *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001).  The court has discretion to grant leave and should freely do so "when justice so requires."  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)).  Nonetheless, courts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  Although leave to amend a complaint is liberally granted under Fed. R. Civ. P. 15, "leave to amend need not be granted if the proposed amended complaint would subject to dismissal."  *Bellanger v. Health Plan of Nev., Inc.*, 814 F. Supp. 914, 916 (D. Nev. 1992) (citing *United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance Corp. of Am.*, 919 F.2d 1398 (9th Cir.1990)); *see also Johnson v. Am. Airlines*, 834 F.2d 721 (9th Cir. 1987) (stating that "courts have discretion to deny leave to amend a complaint for 'futility', and futility includes the inevitability of a claim's defeat on summary judgment.")

Saintal seeks leave to amend her Amended Complaint (dkt. no. 11) to add claims for alleged violations that have occurred since she filed this lawsuit.  Saintal seeks to add two additional defendants to the suit, David Molnar and James Cox.  In her Supplemental Civil Rights Complaint (dkt. no. 50 at 3), Saintal alleges a number of claims, including retaliation, equal protection violations, violations of her freedom of

1   religion, speech and expression, a takings violation, due process violations, 42 U.S.C. §

2   1981 violations, 42 U.S.C. § 1985 conspiracy violations, claims for failure to keep safe,

3   and unlawful transfer in the prison.   Here, only Saintal's equal protection and First

4   Amendment retaliation claims state claims that would survive dismissal.   The remaining

5   allegations do not state claims for relief, and leave to amend as to those claims is

6   denied.

7         Based on the facts alleged, Saintal may only supplement her Amended Complaint

8   with the new retaliation claims.   The gravamen of her retaliation claims are that she has

9   been subject to harassment, punishment, and increased scrutiny due to her grievances

10  and lawsuit filings.   Although various incidents of retaliation and due process violations

11  alleged in the Supplemental Complaint occurred after the filing of the Amended

12  Complaint, they involve similar allegations based on the same core sets of grievances

13  against Defendants.   For this reason, no undue prejudice or delay would result from

14  allowing these additional claims to proceed.   Indeed, allowing these claims to proceed –

15  particularly the retaliation claims that Saintal failed to exhaust – serves the interest of

16  judicial economy by litigating these claims against Defendants who have notice of the

17  allegations against them, rather than forcing Saintal to re-file her lawsuit.

18        Defendants incorrectly argue that Saintal's claims fail because they have not been

19  exhausted before Saintal filed this lawsuit on March 24, 2011.   While Defendants

20  properly cite to *McKinney*, 311 F.3d 1198, for the proposition that claims must be

21  exhausted before the filing of (and not during) a lawsuit, they fail to cite to the Ninth

22  Circuit's decision in *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010).   *Rhodes* stands

23  for the proposition that a prisoner exhausts her administrative remedies with respect to

24  new claims asserted in an amended complaint so long as the exhaustion occurred prior

25  to the prisoner's tendering that complaint to the court for filing.   *Id.* at 1004-07.   Whether

26  a claim in an amended complaint has been exhausted is measured by the date of the

27  prisoner's tendering of the amended complaint, not the date the original action was filed.

28  For this reason, the operative date to determine exhaustion for Saintal's Motion is June

11

1   21, 2012, at the latest.  Saintal's retaliation grievances '915 and '916 were exhausted
2   after she filed her Amended Complaint, but before Defendants filed this Motion.  For this
3   reason, the claims are exhausted.  These two grievances serve as the basis for this
4   supplemental claim.  While the Court denied summary judgment as to '915 and '916 due
5   to exhaustion, this supplemental complaint re-alleging the '915 and '916 retaliation
6   claims proceeds.  In addition, any other retaliation claim mentioned in the Supplemental
7   Complaint survives, provided that it has also been exhausted.

8           However, Saintal's equal protection claims arising out of Defendants' failure to
9   recognize her domestic partnership do not arise from the same sets of facts that initiated
10  this lawsuit.  Even though this newly-brought equal protection claim is exhausted (*see*
11  dkt. no. 56-A5) and would survive initial screening by this Court, this claim does not meet
12  the standard necessary to supplement Saintal's Amended Complaint.   While the
13  retaliation complaints were the subject of prior grievances that Saintal referenced in her
14  original complaint, her equal protection claims seek to introduce "a separate, distinct and
15  new cause of action" unrelated to earlier proceedings in this case.   *See Planned*
16  *Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402-03 (9th Cir. 1997).  Although Saintal
17  alleges that the retaliation she received at the hands of Defendants was in part due to
18  her sexual orientation, her equal protection claim seeks invalidation of state policy as
19  facially unconstitutional independent of the facts of her case.  For this reason, her equal
20  protection claim is better lodged as a separate lawsuit, for it requires separate facts,
21  separate legal justification, and a potentially different set of evidence.  Judicial economy
22  would not be served by allowing this claim to proceed with the others.

23          Accordingly, Saintal's Motion for Leave to File Amended Complaint (dkt. no. 50) is
24  granted in part and denied in part.  Saintal's Supplemental Complaint included therein
25  now serves as the basis for Saintal's motions for temporary and preliminary injunctive
26  relief, discussed below.

27  ///

28  ///

1

2

### G.   Motion for Temporary Restraining Order (dkt. no. 48) and Preliminary Injunction (dkt. no. 49)

Saintal seeks a preliminary injunction and a temporary restraining order from the Court to transfer her to an out-of-state facility, and to reinstate her visits with her partner. She seeks a transfer on the grounds that her current facility subjects her to retaliation, one of the chief allegations in her Second Amended Complaint.

#### 1.   Legal standard

A temporary restraining order is available when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 (3d.1998); *see* Fed. R. Civ. P. 65(b).   Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction.  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n.2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981).

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right.  *Munaf v. Geren*, 553 U.S. 674, 688-90 (2008) (citations and quotation omitted).  Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 9 (2008)) (citation omitted).  Its sole purpose is to preserve the *status quo ante litem* (the status that existed before the lawsuit) pending a determination of the case on the merits. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009); 11A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2947 (3d ed. 2009) ("[A] preliminary injunction . . . is issued to protect the plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits."). Saintal's motions require that the court determine whether she has established the following: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable

1   harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and

2   (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20.

3   In *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d. 1052 (9th Cir. 2010), the

4   court held that "'a preliminary injunction is appropriate when a plaintiff demonstrates . . .

5   that serious questions going to the merits [are] raised and the balance of hardships tips

6   sharply in the plaintiff's favor.'  Of course, plaintiffs must also satisfy the other *Winter*

7   factors, including the likelihood irreparable harm." *Id.* (quoting *Lands Council v. McNair*,

8   537 F.3d 981, 986 (9th Cir. 2008)).  The Ninth Circuit has also utilized a "sliding scale" or

9   balancing test where injunctive relief is available to a party demonstrating a combination

10  of probable success on the merits and the possibility of irreparable harm.  *A & M*

11  *Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

12  Finally, the PLRA mandates that prisoner litigants must satisfy additional

13  requirements when seeking preliminary injunctive relief against prison officials:

14  Preliminary injunctive relief must be narrowly drawn, extend no further than
    necessary to correct the harm the court finds requires preliminary relief,
15  and be the least intrusive means necessary to correct that harm. The court
    shall give substantial weight to any adverse impact on public safety or the
16  operation of a criminal justice system caused by the preliminary relief and
    shall respect the principles of comity set out in paragraph (1)(B) in tailoring
17  any preliminary relief.

18  18 U.S.C. § 3626(a)(2).  Thus, § 3626(a)(2) limits the Court's power to grant preliminary

19  injunctive relief to inmates.  *Gilmore v. People of the State of California*, 220 F.3d 987,

20  998 (9th Cir. 2000).  "Section 3 626(a) . . . operates simultaneously to restrict the equity

21  jurisdiction of federal courts and to protect the bargaining power of prison administrators

22  – no longer may courts grant or approve relief that binds prison administrators to do more

23  than the constitutional minimum."  *Gilmore*, 220 F.3d at 999.

24              **2.      Analysis**

25  The Court holds that Saintal has not demonstrated the necessary elements for

26  preliminary injunctive relief.

27  ///

28  ///

14

### a.     Likelihood of success on the merits

To obtain preliminary relief, Saintal must offer evidence that there is a likelihood she will succeed on the merits of her claim.   *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995).   "Likelihood of success on the merits" has been described as a "reasonable probability" of success.   *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

Saintal has not demonstrated a likelihood of success on the merits of her retaliation and due process claims.  Her retaliation claims are premised on allegations of improper harassment, disciplinary process, and punishment suffered at the hands of various prison officials in response to grievances filed for inappropriate treatment of herself and Gaines.  In support of her claims, Saintal provided two fellow inmates' signed statements recounting some of the alleged harassment.  Defendants challenge Saintal's retaliation claims on the grounds that Saintal's motions are unrelated to her Amended Complaint, and that Saintal's Second Amended Complaint had not been accepted by the Court.   Defendants, in their Motion for Summary Judgment denied above, also challenged Saintal's retaliation claims on the grounds that legitimate disciplinary issues necessitated the adverse action Saintal seeks redress for, and that filing grievances on behalf of others is not a protected right that can sustain a retaliation claim.

Retaliation claims based on prison grievances "raise[] constitutional questions beyond the due process deprivation of liberty."   *See Austin v. Terhune*, 367 F.3d 1167, 1170 (9th Cir. 2004).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.2005) (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) and *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).  Saintal has failed to satisfy these elements, and failed to

1    sustain her burden of demonstrating a likelihood of success on the merits.  There is

2    conflicting evidence as to the motive behind the adverse conduct, as well as whether the

3    action advanced a legitimate correctional goal.  Further, conflicting evidence exists as to

4    whether Gaines could not pursue grievances herself, or that the retaliation did not

5    advance legitimate correctional goals; Saintal must make such showing required in order

6    to demonstrate Saintal's right to pursue grievances on Gaines' behalf.  *See Rizzo v.*

7    *Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  Without more evidence, this fact is neutral

8    with respect to Saintal's retaliation claim.

9                          **b.      Likelihood of irreparable harm**

10         Saintal argues that as a result of the great fear she lives under, failure to provide

11   temporary or preliminary relief could lead to severe emotional and physical harm.

12   Saintal does not proffer evidence of such harm, but alleges that the retaliation she has

13   faced is ongoing and threatens her ability to live in a civilized environment while

14   incarcerated.  While the Court can envision that such harms may result from retaliation,

15   the lack of evidence proves fatal to Saintal's argument.  *See Thompson v. Hartley*, No.

16   10-2260, 2012 WL 639505, at *7 (E.D. Cal. Feb. 27, 2012) (holding prisoner's request

17   for injunctive relief failed in part because lack of evidence of irreparable harm); *Gruendl*

18   *v. Wells Fargo Bank, N.A.*, No. C11-2086RAJ, 2012 WL 1181744, at *3 (W.D. Wash.

19   Apr. 9, 2012) (denying preliminary relief because while "[t]he court can envision

20   irreparable harm . . .  there is no evidence from [plaintiff] in the record" of irreparable

21   injury).

22                          **c.      Balance of hardships and public interest**

23         The balance of hardships and public interest factors in this case favors Saintal.

24   The allegations contained in her Supplemental Complaint, if true, are serious, and the

25   potential hardships Saintal faces would justify the expense of relocating her to another

26   facility.  Similarly, the public interest is served by the protection of the First Amendment

27   rights of its citizens, even if they are prisoners.

28   ///

After considering these factors, the Court finds that neither a temporary restraining order nor a preliminary injunction are warranted.  Although factors three and four favor Saintal, her inability to proffer evidence of irreparable injury in the absence of preliminary relief and her inability to show a likelihood of success on the merits weighs strongly against granting such extraordinary relief.  This is particularly true in light of the added scrutiny courts must give to prisoners seeking preliminary injunctive relief under the PLRA.   Accordingly, Saintal's Motions for a temporary restraining order and a preliminary injunction are denied.

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Plaintiff Priscella R. Saintal's Motion for Reconsideration of Court's Decision to Strike (dkt. no. 29) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Extend Time Regarding Discovery/Nondispositive Matter (dkt. no. 33) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Unauthorized Sur-Reply to Motion for Summary Judgment (dkt. no. 42) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (dkt. no. 35) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend Civil Complaint 42 U.S.C. § 1983 to Add Defendants and Claims (dkt. no. 39) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Amended Complaint (dkt. no. 50) is GRANTED in part and DENIED in part.  Plaintiffs' retaliation allegations contained in her Supplemental Complaint survive, including those allegations included in her Supplemental Complaint which were exhausted by grievances '915 and '916.

IT IS FURTHER ORDERED that Plaintiff's Motion for Temporary Restraining Order (dkt. no. 48) is DENIED.

///

///

1    IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction (dkt.

2 no. 49) is DENIED.

3
     DATED THIS 17th day of October 2012.
4

5    _____

6    MIRANDA M. DU
     UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28